UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA INGRID KELLER WURTZ,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al.,<br><br>    Defendants. | Case No. 20-cv-2163-JCS<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 14 |

## I.  INTRODUCTION

Plaintiff Ana Ingrid Keller Wurtz applied for an EB-5 visa on June 29, 2018. In the period of slightly over two years since then, Defendant United States Citizenship and Immigration Services ("USCIS"[1]) has not taken action on Keller Wurtz's application. Keller Wurtz brings this action seeking mandamus requiring USCIS to process her application. USCIS moves to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court finds the matter suitable for resolution without oral argument. For the reasons discussed below, the motion to dismiss is DENIED.[2]

The hearing previously set for August 14, 2020 at 9:30 AM will proceed instead as a case management conference, at the same time and using the same remote access instructions. The parties need not file a case management statement.

---

[1] Acting Secretary of Homeland Security Chad Wolf and Senior Official Performing the Duties of the Director of U.S. Citizenship and Immigration Services Kenneth Cuccinelli are also named as defendants in their official capacities. This order uses "USCIS" to refer to all defendants collectively.

[2] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II.  BACKGROUND

### A.  Allegations of the Complaint

Because a plaintiff's allegations are generally taken as true in resolving a motion under Rule 12(b)(6), this section summarizes the allegations of Keller Wurtz's complaint as if true. Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case.

Keller Wurtz is a forty-nine-year-old citizen of Mexico seeking to immigrate to the United States with her husband and two children.  Compl. (dkt. 1) ¶¶ 2, 10.  Keller Wurtz works as a sales and marketing director for a winery in California, and currently resides in the United States based on a temporary E-2 work visa.  *Id.* ¶¶ 2, 10.  The passport stamp for that visa has expired, but "she remains in lawful E-2 status until December 1, 2020."  *Id.* ¶ 28.  With E-2 stamp expired and no action on her EB-5 application, however, Keller Wurtz cannot travel internationally, which has caused her to miss important business travel to promote her employer's wine abroad, and has prevented her from visiting her elderly father in Mexico, who recently had surgery.  *Id.* ¶ 29.

Keller Wurtz asserts that she qualifies for an EB-5 investor visa based on a $500,000 investment that she made in 2018 in a hotel project in Oregon, and she filed a Form I-526 petition to obtain such a visa on June 29, 2018 and paid USCIS an application fee of $3,675.  *Id.* ¶¶ 3, 4, 10, 22–24, 32.  USCIS approved Form I-526 petitions of other investors in the same hotel project more than a year ago and granted the project "exemplar" status, which Keller Wurtz asserts means that "the project aspects of her I-526 petition do not need adjudication."  *Id.* ¶ 25.  Keller Wurtz's application demonstrates that she received the funds for her investment lawfully as a gift from her father, who owns a successful manufacturing business.  *Id.* ¶ 27.  According to Keller Wurtz, USCIS's delay in processing her application well beyond the 180-day timeline set by 8 U.S.C. § 1571 is arbitrary and unreasonable.  *Id.* ¶ 6.

While an applicant may request that consideration of an I-526 petition be expedited, Keller Wurtz asserts that such applications are "basically" only granted for applicants who "have extreme health problems or face grave danger in their homeland," and that based on those restrictive criteria, such a request would be frivolous in her case.  *Id.* ¶ 31.  Keller Wurtz could also seek to

renew her E-2 temporary visa passport stamp, but such renewal "can only be granted to her by the American Consul in Mexico City," and has in the past required her to wait in Mexico for a period of months. *Id.* ¶ 30. Keller Wurtz also asserts that her intent to immigrate to the United States, as stated in her pending I-526 application, makes renewal of her E-2 stamp "uncertain." *Id.*

Keller Wurtz brings a single claim to compel agency action both under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, and under 28 U.S.C. § 1361, which provides for mandamus. Compl. ¶¶ 1, 32–35. She seeks an order requiring USCIS "to act upon [her] Form I-526 petition within 15 days." *Id.* ¶ 37.

### B. The Parties' Arguments

USCIS argues that this case should be dismissed because courts in this district have held delays of up to four years reasonable in the immigration context, because the time taken thus far to process Keller Wurtz's application is in line with normal processing times for I-526 petitions, and because ordering expedited processing would only delay consideration of other applications, among other reasons. *See generally* Mot. (dkt. 14). Keller Wurtz contends—among other arguments—that Congress intended immigration petitions to be processed within 180 days, USCIS's I-526 processing times have inexplicably increased recently despite fewer new applications and increased staffing, and no justification is apparent for two years of inaction on her application. *See generally* Opp'n (dkt. 18).

## III. ANALYSIS

### A. Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court generally takes "all

allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B.   Keller Wurtz's Complaint States a Claim

The APA permits a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The following factors, often referred to as the "*TRAC* factors," inform courts' decisions whether to grant such relief:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Independence Mining Co., Inc. v. Babbit*, 105 F.3d 502, 507 & n.7 (quoting *Telecomms. Research*

1  & *Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)) (alterations in original).  Claims
2  challenging unreasonable agency delay under the Mandamus and Venue Act of 1962, 28 U.S.C.
3  § 1361, are "'in essence'" claims "for relief under § 706 of the APA," and courts treat them
4  identically.  *See id.* at 507 (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221,
5  230 n.4 (1986)).

### 1.   Rule of Reason

USCIS argues that courts in this district have generally held that delays of up to four years in the context of immigration applications are sufficiently reasonable to deny the sort relief that Keller Wurtz seeks.  In *Ou v. Johnson*, the court granted a motion to dismiss under Rule 12(b)(6) where an asylum application had pending for eleven months, noting that "courts in this district have generally found delays of four years or less not to be unreasonable under the APA."  *Ou*, No. 15-cv-03936-BLF, 2016 U.S. Dist. LEXIS 191685, at *7–10 (N.D. Cal. Feb. 16, 2016).  In all three of the cases on which *Ou* relied for that statement, however, courts held that asylees whose I-485 applications for permanent resident status had been pending before USCIS—in *Islam*, for almost three years; in *Kahn*, for around a year since being reopened after a denial; in *Dosouqi*, for an unspecified period of time—stated a claim on which relief could be granted and thus *denied* USCIS's motions to dismiss, but granted summary judgment for USCIS because case-specific facts, including each plaintiff's admitted involvement with foreign terrorist groups, indicated that the delay was not unreasonable.  *Dosouqi v. Heinauaer*, No. C 12-3946 PJH, 2013 U.S. Dist. LEXIS 24757, at *3–6 (N.D. Cal. Feb. 22, 2013); *Islam v. Heinauer* ("*Islam I*"), No. C 10-04222 JSW, 2011 U.S. Dist. LEXIS 56239, at *12–13, *18–27 (N.D. Cal. May 25, 2011) (quoting *Gelfer v. Chertoff*, No. C 06-06724 WHA, 2007 U.S. Dist. LEXIS 26466, at *5 (N.D. Cal. Mar. 22, 2007), for the generally rule that unreasonable delay will depend on the facts of a particular case); *Khan v. Scharfen*, No. 08-1398 SC, 2009 U.S. Dist. LEXIS 28948, at *5, *19–27 (N.D. Cal. Apr. 6, 2009).  In a case USCIS cites from the Central District of California, the court granted a motion to dismiss on the basis that a one-and-a-half-year delay was not unreasonable to resolve an EB-5 visa application, but relied on the fact that USCIS had taken some degree of action on the application by issuing a request for evidence and setting a deadline for the plaintiff to respond,

which had not yet passed at the time of the court's decision. *Shihuan Cheng v. Baran*, No. CV 17-2001-RSWL-KSx, 2017 U.S. Dist. LEXIS 122696, at *14–16 (C.D. Cal. Aug. 3, 2017).

In another case from this district, Judge Alsup addressed the issue as follows:

> "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." [*Yu v. Brown*, 36 F. Supp. 2d 922, 934 (D.N.M. 1999)]. Here, respondents fail to show that the delay of petitioner's application is reasonable as a matter of law. Simply asserting that the USCIS is awaiting the results of an FBI name check does not explain why petitioner's application has been stagnant for the past two years. *See Singh* [*v. Still*, 570 F. Supp. 2d 1064 (N.D Cal. 2007)]. Respondents do not point to a single action taken during that period of time to further the processing of petitioner's application or a reason why petitioner's application is particularly troublesome. *See id.* . . . . As in *Yu*, this order does not find respondents' more than two-year delay in the adjudication of petitioner's application reasonable as a matter of law. 36 F. Supp. 2d at 935. On this motion to dismiss, it is premature to consider the exact sources of the delay to determine whether the delay was actually unreasonable under the circumstances. If the delay is found to be unreasonable after a full consideration of the surrounding facts, this Court will then have a duty to "compel" respondents to adjudicate the application by a deadline certain. *See* 5 U.S.C. 706(1).

*Gelfer*, 2007 U.S. Dist. LEXIS 26466, at *5–6; *see also Konchitsky v. Chertoff*, No. C-07-00294 RMW, 2007 WL 2070325, at *4–6 (N.D. Cal. July 13, 2007) (citing *Gelfer* and denying a motion to dismiss where a plaintiff's I-485 application had been pending for more than two years and the record included no "particularized explanation for the delay").

This Court agrees with the general approach that challenges to reasonableness of delay are best considered on an evidentiary record, and respectfully disagrees with the *Ou* court's conclusion that other courts' decisions on the distinguishable facts before them support finding a particular period of delay reasonable as a matter of law on the pleadings. Here, Keller Wurtz alleges that USCIS has arbitrarily failed to resolve her application for a period of around two years, even though USCIS has already approved the specific investment project on which her application is based as an "exemplar." FAC ¶¶ 6, 25. Nothing on the face of her complaint suggests that such inaction is reasonable.

USCIS asks the Court to take judicial notice of the typical processing times listed on its website for I-526 applications. USCIS asserts that, at the time of its motion, that website indicated

a median processing time of 29.5 months and that ninety-three percent of applications were processed within 44.5 months. Mot. at 6 & n.6. As of the date of this order, the website indicates a median processing time of 46 months (just under four years), and that ninety-three percent of applications are processed within 74.5 months (slightly over six years). USCIS, "Check Case Processing Times," https://egov.uscis.gov/processing-times/ (accessed Aug. 12, 2020).[3] The Court may take judicial notice of such matters of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).[4] The fact that USCIS takes equally long or longer to adjudicate other applicants' petitions does not in itself show that such delay is reasonable, particularly where USCIS's rate of review appears to have stalled significantly in the time its motion has been pending, without any explanation for that decline available in the current record.[5] Moreover, USCIS concedes that it has recently shifted its method of review from first-in-first-out to prioritizing applications where a visa is currently available based on country-of-origin quotas. Mot. at 6 n.6. Keller Wurtz asserts, and USCIS does not dispute, that a visa is currently available for her application. Opp'n at 13; Reply at 4 n.3. The median processing time for all applications sheds little light on a reasonable time to process an application prioritized under USCIS's new system, and where the investment project on which the application is based was already approved by USCIS as an exemplar. *See* Compl. ¶ 25.

Based solely on the pleadings and facts subject to judicial notice, the Court finds that the first of the *TRAC* factors, a broad rule of reason, favors Keller Wurtz.

### 2. Congressional Timeline

The second factor is whether Congress has provided an expected timetable for agency

---

[3] An explanation of the range provided by the "Check Case Processing Times" is available at https://egov.uscis.gov/processing-times/more-info.

[4] Keller Wurtz asks the Court to take judicial notice of an expert's declaration stating that processing times for I-526 applications have drastically increased in the last few years, despite increased staffing and fewer new applications. The expert's assertion that her data is based on previously available public records does not transform her declaration into a public record itself, Opp'n Ex. A at 1 & n.3, and the Court has no basis to determine independently whether the declaration is accurate. The Court declines to take judicial notice of the expert declaration, which would be more suitable for the context of summary judgment.

[5] It is possible that the COVID-19 public health emergency has contributed at least in part to the recent change in USCIS's rate of application processing, but no such explanation is apparent on the pleadings or in any source offered for judicial notice.

action.  Congress has stated, in codified statute, its "sense . . . that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b).  USCIS is correct that this timeline is not mandatory, but it nevertheless weighs in favor of finding the delay here—approximately four times Congress's stated goal—to be unreasonable.  *See Islam v. Heinauer* ("*Islam II*"), 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014) ("While the language of § 1571(b) is not mandatory, it nonetheless suffices to tip the second *TRAC* factor [in] Islam's favor.").[6]

### 3. Nature of Interests

The third *TRAC* factor instructs courts to consider that "delays that might be reasonable in the sphere or economic regulation are less tolerable when human health and welfare are at stake," and the fifth factor looks to "the nature and extent of the interests prejudiced by the delay."  *Independence Mining*, 105 F.3d at 507 n.7.  "The third and fifth factors overlap, and the Court shall evaluate them together."  *Islam I*, 2011 U.S. Dist. LEXIS 56239, at *24.  Keller Wurtz alleges that she cannot travel internationally while her application is pending, and that in addition to professional consequences, she therefore has not been able to visit her elderly father in Mexico.  Compl. ¶ 29.  She alleges that the alternative approach of seeking to renew her E-2 visa stamp could require her to wait in Mexico for months, away from her home and place of business in California, and successful renewal would be uncertain.  *Id.* ¶ 30.  Because these alleged effects of USCIS's delay go beyond merely commercial concerns, this factor weighs in favor of relief, although not as strongly as it might if Keller Wurtz faced persecution, medical consequences, or other more severe harm if not granted relief.

USCIS has identified no countervailing interest apparent from the face of Keller Wurtz's complaint or facts subject to judicial notice that counsels in favor of delay.

---

[6] USCIS argues that, in an earlier decision involving the same plaintiff Mohammed Sher Islam, Judge White found the second factor to weigh in favor of USCIS.  Reply at 4–5.  Judge White in fact noted that the processing time exceeding 180 days "would weigh in [the plaintiff's] favor," but held on summary judgment that the factor overall weighed against granting relief based on statutory requirements specific to the unusual circumstances of the plaintiff's application—the need for an exemption from rules excluding members of foreign terrorist organizations from asylum—for which Congress had provided no timetable.  *Islam I*, 2011 U.S. LEXIS 56239, at *22–24.

#### 4. Effect of Granting Relief

Under the fourth factor, "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority." *Independence Mining*, 105 F.3d at 507 n.7.

Some courts have held that the "effect" factor favors USCIS in similar cases because granting a particular applicant injunctive relief would only serve to place that applicant at the front of the line, delaying adjudication of other applications that might have been pending longer. *See, e.g.*, *Ou*, 2016 U.S. Dist. LEXIS 191685, at *9–10; *Pesantez v. Johnson*, 2015 U.S. Dist. LEXIS 124508, at *11–12 (E.D.N.Y. Sep. 16, 2015). That may be so, but it is not apparent from the face of Keller Wurtz's complaint, or from any material for which USCIS has requested judicial notice. The pleadings do not show that USCIS is working at a reasonable pace to process the applications pending before it, or that it has prioritized those applications in a reasonable way. At this stage of the case, in the absence of an evidentiary record showing that granting relief would serve only to delay other applications equally deserving of consideration—or, for that matter, evidence or allegations to the contrary—the Court finds this factor neutral.

#### 5. Impropriety

The sixth and final item in the *TRAC* collection is not so much a "factor" as an instruction not to place undue weight on an absence of improper motive: "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Independence Mining*, 105 F.3d at 507 n.7 (internal quotation marks omitted). There is no allegation of impropriety here, but there need not be. This consideration, to the extent it might be relevant at all, does not warrant dismissal.

\* \* \*

Based solely on the allegations of Keller Wurtz's complaint and facts subject to judicial notice, the first, second, third, and fifth *TRAC* factors weigh, to varying degrees, in favor of granting relief. The remaining factors are neutral. The Court therefore finds no basis to dismiss Keller Wurtz's complaint.

9

## IV. CONCLUSION

For the reasons discussed above, USCIS's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: August 12, 2020

                                             _____
                                             JOSEPH C. SPERO
                                             Chief Magistrate Judge